**2009 BNH 013**

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 07-11614-JMD
                                                          Chapter 7

Laura Perrotta,
              Debtor


Phoebe Morse, United States Trustee,
              Plaintiff

v.                                                        Adv. No. 08-1117-JMD

Laura Perrotta,
              Defendant

*Ann Marie Dirsa, Esq.*
*Office of the U.S. Trustee*
*Manchester, New Hampshire*
*Attorney for the U.S. Trustee*

*Mark P. Cornell, Esq.*
*Cornell and Ovitt Puc, PLLC*
*Concord, New Hampshire*
*Attorney for Debtor/Defendant*


## MEMORANDUM OPINION

## I.  INTRODUCTION

Before the Court is a motion to dismiss (the "Motion") filed by Laura Perrotta (the

"Debtor") in an action under § 727(d)(1) of the Bankruptcy Code[1] brought by the United States

Trustee ("UST").  The UST filed this adversary proceeding seeking to revoke the Debtor's

---

[1]  In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United
States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

discharge under § 727(d)(1) because the Debtor allegedly failed to disclose cash advances on a credit card and her interest in several bank accounts on her bankruptcy schedules.  The Debtor filed a motion to dismiss arguing that § 727(d)(1) only allows the UST to request revocation of the discharge if she learns of a debtor's fraud after the discharge is granted, and here, no discharge has entered.  In response, the UST filed an objection, arguing that the statute should not provide a safe haven for fraud if the debtor's fraud is discovered before the discharge is entered.  The Court held a hearing on the motion in connection with a pretrial conference, at which both sides presented arguments, and the matter was taken under submission.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  BACKGROUND

### A.  The Issue

The Federal Rules of Bankruptcy Procedure[2] set a short deadline for the filing of complaints by a party in interest objecting to a debtor's discharge in bankruptcy.  Bankruptcy Rule 4004(a).  The bankruptcy court is directed to "forthwith" grant a discharge to a debtor once the deadline to object to a discharge has expired.  Bankruptcy Rule 4004(c)(1).  Congress has authorized bankruptcy courts to revoke the discharge of a debtor under limited circumstances when fraud is detected or a debtor fails to perform her statutory obligations, after entry of the

---

[2]  The Federal Rules of Bankruptcy Procedure shall be referred to as "Bankruptcy Rule" in this opinion.

discharge.  See 11 U.S.C. § 727(d).  However, both the Bankruptcy Code and the Bankruptcy

Rules are silent on how a debtor's right to a discharge is affected when knowledge of facts which

would support an objection to discharge are discovered after the deadline to object to a discharge

expires and before the discharge is entered by the court.  The issue before the Court is the effect

of such a discovery during this "gap period."

### B.  Procedural and Factual History

For the purposes of ruling on the Motion, the Court draws the following factual

background from the complaint.  The Debtor filed for chapter 7 relief on July 31, 2007.  The

meeting of creditors was scheduled for September 4, 2007.  The deadline to file a complaint

objecting to discharge was accordingly set for November 5, 2007.  In schedule B of her

bankruptcy petition, the Debtor listed a single checking account with a $1,500 balance and a

single savings account with a $300 balance.  She later appeared for her required meeting of

creditors under 11 U.S.C. § 341 and was questioned under oath by the chapter 7 trustee.  The

Debtor reaffirmed the accuracy and truth of her schedules and statements.  The chapter 7 trustee

asked the Debtor whether she took any cash advances on credit cards within the last 12 months

and the Debtor answered no.  The next day the chapter 7 trustee filed a no distribution report in

the Debtor's bankruptcy case indicating no assets were available for distribution to unsecured

creditors.

On August 9, 2007, shortly after the filing of the chapter 7 petition, the UST requested

documents from the Debtor regarding the income and expenses she claimed on her schedules,

including bank statements, canceled checks, and credit card statements for the year before she

filed bankruptcy.  The request was made as part of the mandatory review of individual chapter 7

bankruptcy cases under § 704(b)(1) to determine if a case is presumed to be an abuse under § 707(b)(1).  The Debtor refused to produce the documents because she argued they were not required to be filed with the Court under § 521 and § 704(b)(1) limited the UST's review to documents actually filed.

On September 14, 2007, the UST filed a statement under § 704(b)(1) that she was unable to determine if the Debtor's chapter 7 case was presumed to be an abuse.  A few days later, the UST filed a motion under Bankruptcy Rule 2004 to require the Debtor to produce the same documents for the one year period before bankruptcy, regardless of whether the relevant accounts were held individually or jointly with another person.  The Court denied the Rule 2004 motion because the congressionally-mandated deadline in § 704(b)(1) does not contemplate or require the UST to review documents other than those filed with the Court or provided to the chapter 7 trustee.  In re Perrotta, 378 B.R. 27, 29 (Bankr. D.N.H. 2007).  The Court held that if the UST were to file a motion to dismiss, she could pursue discovery under Bankruptcy Rule 9014.  Id. at 30.

On October 9, 2007, the UST filed a statement under § 704(b)(1)(A) stating her determination that the Debtor's case was presumed to be an abuse under § 707(b)(2).  The UST accordingly filed a motion to dismiss the case under § 707(b)(2) or (b)(3) three days later.  The UST argued that granting the Debtor a discharge would be presumptively abusive of chapter 7 because the Debtor had sufficient disposable income to repay her creditors.  On November 21, 2007, the Court granted the Debtor's motion to dismiss the UST's motion to the extent that it was based upon a presumption of abuse under § 707(b)(2) because the UST had not filed her statement of presumed abuse within the statutory deadline in § 704(b)(1)(A).  In re Perrotta, 378

4

B.R. 434, 438 (Bankr. D.N.H. 2007).  The UST then pursued her motion to dismiss under the totality of the circumstances standard in § 707(b)(3).  As part of the discovery process, the UST subpoenaed the Debtor's bank and credit card account records and found previously undisclosed financial accounts.  However, that discovery occurred after November 5, 2007, the deadline to object to the Debtor's discharge under Bankruptcy Rule 4004(a).

The UST identified several bank accounts held jointly by the Debtor, including two Citizens Bank checking accounts, two Citizens Bank savings accounts, and two RTN Federal Credit Union accounts.  The records revealed that these bank accounts had a collective balance over $19,000 on the petition date.  The UST later deposed the Debtor regarding these accounts. The Debtor testified that she received monthly statements for two of the Citizens Bank accounts, and the other two Citizens Bank accounts were joint accounts held by her and her daughter.  The bank account records also included copies of canceled checks drawn on one of the RTN Federal Credit Union accounts and deposited in one of the Citizens Bank accounts, including a check for $7,500 signed and deposited by the Debtor on the petition date.  The Debtor admitted at the deposition that the signature on the $7,500 check was hers.

The UST also received account statements regarding two of the Debtor's credit cards, one from Discover Financial Services and one from Advanta Bank Corporation.  The records show that a $17,001 cash advance was taken from the Debtor's Discover credit card and deposited in one of her Citizens Bank accounts on October 9, 2006.  The Debtor testified at her deposition that her husband used the card and made the transfer without her knowledge.  The account statements from the Debtor's Advanta Bank credit card revealed that in October and November 2006, more than $13,000 in cash advances were taken from the Advanta card in a

series of transactions.  The Debtor testified at her deposition that she gave her husband use of her Advanta card and that he made some of those transfers.

In May 2008, the chapter 7 trustee withdrew his no distribution report, and he later filed a notification of asset recovery and a request to set a proof of claim deadline.  The chapter 7 trustee also demanded that the Debtor turnover the undisclosed balances on the accounts and repay the undisclosed cash advances.  The Debtor has refused to turn over any money to the trustee and has failed to amend her petition or schedules to reflect the undisclosed accounts.

On August 27, 2008, the UST filed the complaint that started this adversary proceeding. The UST's complaint alleges two counts under § 727(d)(1) based on the facts described above. First, the UST alleges the Debtor knowingly concealed property of the estate with the intent to hinder, delay, or defraud creditors, the chapter 7 trustee, or the UST by failing to disclose the accounts on schedule B and by falsely testifying at the § 341 meeting that her schedules were accurate and complete.  Second, the UST alleges the Debtor knowingly concealed the cash advance transactions on the credit cards and falsely testified at the § 341 meeting that she had not taken cash advances within the last 12 months with the intent to hinder, delay, or defraud. The UST also states in both counts that she and the chapter 7 trustee did not know or have reason to know of the Debtor's fraudulent conduct until after the deadline to object to the discharge expired.  Simultaneously with the filing of her complaint under § 727(d)(1), the UST withdrew her § 707(b) motion to dismiss the Debtor's case.

### C.  The Parties' Arguments

The Debtor argues that the complaint fails to state a claim under § 727(d) because it seeks revocation of a discharge that has not entered and, therefore, should be dismissed.  In

support, the Debtor cites <u>Zedan v. Habash (In re Habash)</u>, 529 F.3d 398 (7th Cir. 2008), one of several cases that have adopted a strict approach to bar suits filed under § 727(d)(1) that were based on fraud learned during the "gap period," the period after expiration of the deadline in Bankruptcy Rule 4004(a) to object to the debtor's discharge but before the discharge is entered.

The UST argues that § 727(d)(1) allows a complaint to revoke the discharge even before the actual entry of the discharge because Congress did not intend to provide a safe haven for fraud if the party seeking revocation happens to learn of the debtor's fraud during the gap period. The UST argues that a growing majority of courts support this view, and she points to <u>Citibank, N.A. v. Emery (In re Emery)</u>, 132 F.3d 892 (2d Cir. 1998), one of a competing line of cases that adopt a more equitable approach and allow a complaint to revoke the discharge before the discharge enters if the fraud is discovered in the gap period.


## III.  DISCUSSION

### A.  Motion to Dismiss Standard

A motion to dismiss asks the court to look at a plaintiff's complaint to determine whether the allegations in the complaint adequately state a recognizable cause of action under the applicable law.  The motion to dismiss standard is governed by Federal Rule of Civil Procedure 12(b)(6),[3] made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 7012(b).  Under Rule 12(b)(6), the Court assumes the truth of all well-pleaded facts in the complaint and makes all reasonable inferences in favor of the plaintiff.  <u>Fitzgerald v. Harris</u>, 549 F.3d 46, 52

---

[3]  In general the Federal Rules of Civil Procedure are made applicable to this adversary proceeding, with some exceptions and additional provisions, by the Federal Rules of Bankruptcy Procedure.  The Federal Rules of Civil Procedure shall be referred to as "Rule" in this opinion.

(1st Cir. 2008).  A complaint must allege a "plausible entitlement to relief" to survive a motion

to dismiss.  <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 58 (1st Cir. 2008) (quoting <u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007)).  The facts must raise a right to relief above the

speculative level and sustain a reasonable expectation that discovery will reveal evidence to

support the relief.  <u>Twombly</u>, 127 S.Ct. at 1965; <u>Gray v. Evercore Restructuring, LLC</u>, 544 F.3d

320, 324 (1st Cir. 2008).  Dismissal for failure to state a claim is therefore appropriate if the

complaint fails to include factual allegations, either direct or inferential, regarding each material

element under an actionable legal theory.  <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir.

2008).

### B.  Fresh Start Under the Bankruptcy Code

"One of the primary purposes of [the federal bankruptcy law] is to 'relieve the honest

debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the

obligations and responsibilities consequent upon business misfortunes.'"  <u>Local Loan Co. v.</u>

<u>Hunt</u>, 292 U.S. 234, 244 (1934) (quoting <u>Williams v. U.S. Fid. & Guar. Co.</u>, 236 U.S. 549, 554-

55 (1915)).  A discharge of indebtedness under the Bankruptcy Code provides a fresh start to the

"honest but unfortunate debtor who surrenders for distribution the property he owns at the time

of bankruptcy."  <u>Martin v. Bajgar (In re Bajgar)</u>, 104 F.3d 495, 501 (1st Cir. 1997) (quoting

<u>Local Loan</u>, 292 U.S. at 244).  But a discharge of indebtedness is denied to those debtors who

"play fast and loose with their assets."  <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 786 (1st Cir. 1997)

(quoting <u>Boroff v. Tully (In re Tully)</u> 818 F.2d 106, 110 (1st Cir. 1987)).

Congress has codified this fresh start policy in several provisions of the Bankruptcy

Code.  For example, debtors are required to file with the bankruptcy court a schedule of their

assets and liabilities, as well as schedules of current income and expenses.  See 11 U.S.C. § 521(a)(1)(B).  This disclosure is necessary to permit trustees and other parties in interest to examine the debtor's financial condition and business transactions and to help evaluate whether the debtor deserves a fresh start.  Indeed, "the successful functioning of [federal bankruptcy law] hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."  Tully, 818 F.2d at 110 (quoting In re Mascolo, 505 F.2d 274, 278 (1st Cir. 1974)).

Similarly, Congress has indicated that the "heart of the fresh start provisions" of the Bankruptcy Code is § 727.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6340.  Normally, individual debtors are entitled to a discharge of indebtedness except as otherwise limited by the provisions of the Bankruptcy Code and other applicable federal law.  See, e.g. 11 U.S.C. § 523(a) (listing nineteen categories of debts that are or may be excepted from discharge); 42 U.S.C. § 292f(g) (establishing a higher standard for the discharge of federally-insured HEAL student loans).  But debtors who knowingly and fraudulently fail to provide accurate schedules of their financial affairs by omitting a material fact are not entitled to a discharge.  11 U.S.C. § 727(a)(4); Tully, 818 F.2d at 110.  Likewise, debtors who attempt to hinder, delay, or defraud a creditor or a trustee by transferring, removing, destroying, or concealing property are not entitled to a discharge.  11 U.S.C. § 727(a)(2); Bajgar, 104 F.3d at 501-02.

Consistent with the congressional policy of providing the honest debtor with a fresh start, courts construe the discharge provisions of the Bankruptcy Code liberally in favor of the debtor and strictly against the party opposing discharge.  Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002).  "[T]he reasons for denying a discharge must be real and substantial, not

9

merely technical and conjectural." Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992) (quoting Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir. 1934)). Congress also recognized that when a debtor obtains a discharge through fraud, fails to obey court orders, fails to cooperate with the trustee, or knowingly and fraudulently fails to report the acquisition of property of the bankruptcy estate and deliver or surrender such property to the trustee, a discharge previously granted may be revoked.  11 U.S.C. § 727(d).  However, an action seeking revocation of a discharge must be commenced within one year after the discharge is granted or, in certain circumstances, before the closing of the case.  11 U.S.C. § 727(e).

### C.  Fresh Start Under the Bankruptcy Rules

Under a delegation of authority from Congress, the United States Supreme Court has "the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11."  28 U.S.C. § 2075.  But the rules "shall not abridge, enlarge, or modify any substantive right."  Id.  Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.  In re Roberts, 68 B.R. 1004, 1006 (Bankr. E.D. Mich. 1987).[4]

Bankruptcy Rule 4004 is the main procedural complement to the substantive provisions of § 727 of the Bankruptcy Code and the fresh start policy of federal bankruptcy law.  In a case

---

[4] Before the Bankruptcy Code was passed, the Bankruptcy Rules superceded contrary provisions of the statute.  Roberts, 68 B.R. at 1006. "Under the former version of 28 U.S.C. § 2075, which existed prior to the enactment of the Bankruptcy Code, the Rules of Bankruptcy Procedure superceded contrary provisions of the Bankruptcy Act, as the section included the following sentence: 'All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.'  Section 247 of Public Law 95-598, the law which enacted the Bankruptcy Code, repealed this latter sentence."  Id.  The legislative history of the Bankruptcy Code states that although the rulemaking power of the Supreme Court was retained, it was more limited than under the Bankruptcy Act and was to be exercised consistent with the substantive provisions of the Bankruptcy Code.  Ad Hoc Protective Comm. for 101/2% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982).

under chapter 7, Bankruptcy Rule 4004(a) sets the sixtieth day after the first date set for the meeting of creditors under § 341(a) as the deadline to file a complaint objecting to discharge. The bankruptcy court may extend that deadline for cause, but only on motion by a party in interest filed before the deadline has expired.  Bankruptcy Rule 4004(b).  But the court cannot extend the deadline if the motion is filed after the deadline.  Bankruptcy Rule 9006(b)(3). Bankruptcy Rule 4004(c)(1) provides that when the deadline in Bankruptcy Rule 4004(a) expires, "the court shall forthwith grant the discharge."  The Bankruptcy Rules do not address what happens if a discharge is not granted immediately after the expiration of the deadline to object to a discharge.

The Bankruptcy Rules also establish fourteen exceptions to the general rule that a discharge shall be entered "forthwith" after the expiration of the objection deadline.  Two of those exceptions do not create a gap period,[5] but twelve of them do create a gap period.  Of those twelve exceptions created by the Bankruptcy Rules, five are or may be within the control of a debtor and six are or may arise through the actions of a creditor or the UST.  One exception could create a gap period by the action of either the debtor or a creditor.  The exceptions to the prompt entry of a discharge due to circumstances within the control of the debtor arise when:

- the debtor has not paid in full the required filing fee, Bankruptcy Rule 4004(c)(1)(G);

- the debtor has not filed the required statement of completion of a course concerning personal financial management, Bankruptcy Rule 4004(c)(1)(H);

---

[5] Two of those exceptions arise when a debtor is not an individual, Bankruptcy Rule 4004(c)(1)(A), or when a debtor has waived her discharge, Bankruptcy Rule 4004(c)(1)(B).  Neither of these exceptions create a gap period.

11

- a motion to enlarge the time to file a reaffirmation agreement under Bankruptcy Rule 4008(a) is pending, Bankruptcy Rule 4004(c)(1)(J);[6]

- a motion is pending to delay discharge, because the debtor has not filed required tax documents, Bankruptcy Rule 4004(c)(1)(L);

- the entry of a discharge has been deferred on the debtor's request, Bankruptcy Rule 4004(c)(2); or

- a debtor has not filed a statement with respect to certain exemptions, if required by Bankruptcy Rule 1007(b)(8), Bankruptcy Rule 4004(c)(3).

The exceptions to the prompt entry of a discharge due to circumstances arising from actions taken by a party in interest other than the debtor arise when:

- a complaint objecting to the discharge has been filed, Bankruptcy Rule 4004(c)(1)(B);

- a motion to dismiss under § 707(b) is pending, Bankruptcy Rule 4004(c)(1)(D);

- a motion to extend the time to object to discharge is pending, Bankruptcy Rule 4004(c)(1)(E);

- a motion to extend the time to file a motion to dismiss a case for abuse under § 707(b) or (c) is pending, Bankruptcy Rule 4004(c)(1)(F);

- a motion to delay or postpone discharge under § 727(a)(12) is pending, Bankruptcy Rule 4004(c)(1)(I);

- a motion to enlarge the time to file a reaffirmation agreement under Bankruptcy Rule 4008(a) is pending, Bankruptcy Rule 4004(c)(1)(J);[7] or

- a presumption of undue hardship under § 524(m) has arisen, Bankruptcy Rule 4004(c)(1)(K).

The express provisions of the Bankruptcy Rules fail to address the uncertainty created by gap periods, despite the important fresh start policy of providing a prompt discharge only for the

---

[6] A motion under Bankruptcy Rule 4008(a) could also be filed by a creditor.

[7] A motion under Bankruptcy Rule 4008(a) could also be filed by the debtor.

unfortunate but honest debtor.  This failure affects both the right of a debtor to a prompt

discharge and the right of a party in interest to object to a discharge under the grounds

established in § 727 of the Bankruptcy Code.

### D.  "Gap Period" Cases Under § 727(d)(1)

In a typical case, the Bankruptcy Rules do not create a gap period because Bankruptcy

Rule 4004(c)(1) requires a discharge is to be entered "forthwith" after the deadline in

Bankruptcy Rule 4004(a) expires.  But a court may not enter a discharge immediately after the

expiration of the objection deadline for a number of foreseeable reasons.  A court may fall

behind on issuing discharges due to a spike in bankruptcy filings, insufficient staff, or

administrative error or oversight.  This delay creates a gap (intentional or unintentional) between

the deadline in Bankruptcy Rule 4004(a) requiring that an objection to discharge be filed before

the deadline expires and § 727(d)(1), which provides that a request to vacate a discharge

obtained through a debtor's fraud must be based on knowledge obtained by a party in interest

only after the entry of the discharge.

Any such delay is problematic for both debtors and creditors.  For debtors, the discharge

is the important vehicle that provides the fresh start free from pre-bankruptcy obligations.  But

for creditors and other parties in interest, a delay forces them into an uncertain and awkward

position: they cannot object to the discharge because the deadline in Bankruptcy Rule 4004(a)

has expired, but they cannot request that the discharge be revoked under §§ 727(d) and (e)

because the discharge has not been entered.

Generally, two competing lines of cases have considered objections and revocations to

discharge based upon knowledge obtained during the gap period.  Some courts read the statute

strictly and deny an objection to discharge if it is filed after the deadline established in Bankruptcy Rule 4004(a) because the grounds for the objection were known before the entry of the discharge.  See Habash, 529 F.3d at 405-06 (dictum);[8] Powell v. First Nat'l Bank of Nashville (In re Powell), 113 B.R. 512, 513 (W.D. Ark. 1990); Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver), 367 B.R. 795, 820-22 (Bankr. D.N.M. 2007); Employers Mut. Cas. Co. v. Lazenby (In re Lazenby), 253 B.R. 536 (Bankr. E.D. Ark. 2000).  Other courts adopt an equitable approach and ignore the limitation in § 727(d)(1) to allow a party to seek revocation when the requesting party learns of the debtor's fraud during the gap period.  See Emery, 132 F.3d at 895-96; Ross v. Mitchell (In re Dietz), 914 F.2d 161 (9th Cir. 1990); England v. Stevens (In re Stevens), 107 B.R. 702 (B.A.P. 9th Cir. 1989); Cage v. Watson (In re Watson), 2007 WL 4480130 (Bankr. S.D. Tex. Dec. 17, 2007); Nazar v. Schowengerdt (In re Schowengerdt), 2004 WL 2334727 (Bankr. D. Kan. Feb. 19, 2004); In re Magundayao, 313 B.R. 175 (Bankr. S.D.N.Y. 2004); Walton v. Staub (In re Staub), 208 B.R. 602 (Bankr. S.D. Ga. 1997); In re Meo, 84 B.R. 24 (Bankr. M.D. Pa. 1988).  The parties are asking this Court to choose one of these two approaches.

### 1.  The Strict Approach to § 727(d)(1)

The strict approach to § 727(d)(1) adopts a plain language reading of the statute, regardless of how harsh or illogical the result might be.  These courts require that the requesting party must "not know of such fraud until after the granting of such discharge."  11 U.S.C.

---

[8]  The Seventh Circuit in Habash apparently did not join the strict approach and instead ruled on narrower grounds.  529 F.3d at 405.  It dodged the "gap period" dilemma by ruling that the creditor's complaint failed to state a claim under Rule 12(b)(6) because it asked the bankruptcy court to do the impossible: revoke a discharge order that was never issued.  Id.  But in dictum the court approved of the strict approach: the requesting party under § 727(d)(1) must discover the fraud after the discharge is entered.  Id. at 405-06.

§ 727(d)(1).  If the requesting party happened to learn of the fraud after the sixty-day deadline in Bankruptcy Rule 4004(a) expires, but before a discharge is entered, that party is out of luck. Most of the courts cite <u>Powell</u> in support of this approach.  There, the district court declined to adopt a more liberal approach "where the commands of Congress and the Supreme Court are plainly and unmistakably to the contrary."  <u>Powell</u>, 113 B.R. at 513.  While the court did find it difficult to imagine why Congress and the Supreme Court would want to allow discharges to be avoided by fraud discovered after the discharge, but not by frauds discovered in the gap period, it ruled that it was not its job "to rationalize the statute and the rule."  <u>Id.</u>

Although this approach is analytically easy to follow, it is problematic for several reasons.  First, a strict approach forces precautionary extensions of the bar date by use of Bankruptcy Rule 4004(b) based on even the slightest suspicions that the debtor might be engaged in some sort of fraud, and therefore interferes with the Bankruptcy Code policy favoring a prompt discharge for deserving debtors.  <u>Emery</u>, 132 F.3d at 896; <u>see</u> <u>Slaiby v. Rassman (In re Slaiby)</u>, 50 B.R. 245, 250 (Bankr. D.N.H. 1985) (noting the "fresh start" policy favors the debtor's right to a prompt discharge).  Second, a strict approach implies that "Congress intentionally drafted a statute to punish fraudulent conduct by debtors that at the same provides a period of immunity for such debtors."  <u>Emery</u>, 132 F.3d at 896.  But "[n]othing in the Bankruptcy Code itself indicates an intention to create immunity during a gap period."  <u>Id.</u> Especially where § 727(c)[9] and (d) together "contemplate that diligent creditors [or a UST] will

---

[9] Section 727(c) provides:
      (c) (1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.
       (2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

have a remedy against fraudulent debtors." Id.  Third, a strict approach protects a safe haven gap period that does not seem rational in light of the fresh start policy embodied in § 727.  If, by chance, the fraud is discovered in the gap period, debtors get to confess their sins and avoid any consequences, despite § 727's explicit focus on preventing discharges for fraudulent debtors. Staub, 208 B.R. at 606.

### 2.  The Equitable Approach to § 727(d)(1)

The equitable approach to § 727(d)(1) interprets the statute and the corresponding rule in light of their underlying purposes and aims to be consistent with the "spirit" of the Bankruptcy Rules.  Dietz, 914 F.2d at 164.  Courts adopting this method acknowledge the Supreme Court's command that "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989).  But they also emphasize that the Supreme Court in Ron Pair said a court can depart from a plain language reading if "literal application of a statute will produce a result demonstrably at odds with the intentions of [the statute's] drafters."  Id. at 242; see Emery, 132 F.3d at 895 (quoting Ron Pair).  The equitable approach uses that reasoning to depart from the otherwise plain language in § 727(d)(1) and to allow a complaint to revoke the debtor's discharge to proceed even before the discharge enters.  See Dietz, 914 F.2d at 164 ("deeming" the discharge to have been entered on the sixtieth day of the Bankruptcy Rule 4004(a) deadline even without a formal discharge); Meo, 84 B.R. at 28 (permitting a creditor to revoke a discharge after the sixty-day deadline even without the actual entry of a discharge). While the equitable approach appeals to fairness and may appear to operate more in line with congressional intent as expressed in the language of § 727(d), it is also problematic.

16

First, the equitable approach ignores the clear, unambiguous language of § 727(d)(1) and effectively rewrites the statute to allow pre-discharge revocation to avoid a bad result.  Courts routinely reject arguments based on fears that applying the plain language of a statute produces unintended or cruel outcomes.  See, e.g., Lamie v. United States Trustee, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); In re DCT, Inc., 283 B.R. 442, 446 (Bankr. E.D. Mich. 2002) (a harsh result is not a basis to ignore a statute's plain language); In re Horwitz, 167 B.R. 237, 240 (Bankr. W.D. Okla. 1994) ("if application of the law causes untoward, unwelcome, arbitrary or fortuitous results it is for Congress to deal with any perceived bad policy").  When courts apply a statute's plain meaning (and avoid substituting judicial interpretation), they do so because courts traditionally defer to the legislative branch and recognize that legislators vote for the language of a bill as it is, not what it could be.  Lamie, 540 U.S. at 538; United States v. Locke, 471 U.S. 84, 95 (1985).

Second, the equitable approach arguably permits the Bankruptcy Rules to produce a result that the Bankruptcy Code prohibits.  Section 727 does not provide for a gap period. However, the Bankruptcy Rules create a gap period through the exceptions to the general rule of entering a discharge "forthwith" after the expiration of the deadline to object to a discharge. Bankruptcy Rule 4004(c).  The equitable approach "deems" that a discharge is entered after the expiration of the objection deadline established by the Bankruptcy Rules to avoid the policy conundrum arising from the conflict between the Bankruptcy Rule-created gap period and the statutory language requiring an entered discharge before grounds to revoke it are known by the party objecting to discharge.  11 U.S.C. § 727(d)(1).  Substantive conflicts between the statute

and the Bankruptcy Rules should not be resolved by reading language into the statute.  See 28 U.S.C. § 2075; Habash, 529 F.3d at 406; Term Loan Holder Comm. v. Ozer Group, LLC (In re Caldor Corp.), 303 F.3d 161, 170 (2d Cir. 2002) (ignoring the plain meaning of a Bankruptcy Code provision solely because it conflicts with a Bankruptcy Rule violates 28 U.S.C. § 2075). The fact remains, "when the Bankruptcy Rules fail to operate as expected and produce a conflict with the Code, the Code must prevail."  Habash, 529 F.3d at 406; see In re Pioneer Fin. Corp., 246 B.R. 626, 633 (Bankr. D. Nev. 2000) (language in Bankruptcy Rule 3018 referencing acceptance of a chapter 11 plan by a "holder of record" conflicts with the language of § 1126 which provides that it is the "holder of a claim or interest" who may accept or reject a plan).

Third, when possible, provisions in the Bankruptcy Code should be construed "liberally in favor of the debtor."  Habash, 529 F.3d at 406; see Tully, 818 F.2d at 110 (right to discharge should be construed liberally in favor of the debtor); Notinger v. Weisberg (In re Weisberg), 202 B.R. 332, 334 (Bankr. D.N.H. 1996) (discharge revocation is construed liberally in favor of the debtor and strictly against parties objecting to discharge).  Rather than allowing the statute to benefit the debtor by explicitly limiting the rights of a requesting party to revoke a discharge, the equitable approach creates uncertainty about when the discharge is effectively entered, thus weakening finality.[10]  Cf. Dahar v. Bevis (In re Bevis), 242 B.R. 805, 810 (Bankr D.N.H. 1999) (discharge order should be imbued with a high degree of finality and finality would be compromised if § 727(e) were subject to equitable tolling).

**E.  Analysis**

---

[10]  As the Court previously mentioned, the strict approach also suffers a similar infirmity in that it forces precautionary extensions of the deadline in Bankruptcy Rule 4004(a) and thereby delays the debtor's discharge.

The power delegated to the Supreme Court to enact the Bankruptcy Rules is subject to the limitation that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075;  MBNA Am. v. Locke (In re Greene), 223 F.3d 1064, 1070 (9th Cir. 2000). Bankruptcy Rule 4004(a) requires that a complaint objecting to a discharge be filed before the expiration of the deadline determined under the rules.  Bankruptcy Rule 4004(c)(1) requires that a discharge be entered "forthwith" after the expiration of the deadline to object.

> The Bankruptcy Code and the Bankruptcy Rules obviously contemplate a unitary concept: If a creditor knows of a debtor's fraud before a bar date, the creditor should object to discharge.  If there are no objections to discharge by the bar date, the bankruptcy court should grant discharge forthwith.  A creditor then has a year to bring an action to revoke the discharge based upon knowledge of fraud obtained after the discharge date.  In other words, Congress has provided the remedy of denying discharge to a fraudulent debtor from the beginning of the case until one year after discharge.

Emery, 132 F.3d at 895.  But a gap period between the expiration of the deadline to object to discharge and the entry of a discharge creates an exception to the otherwise unitary concept of a fresh start for honest debtors established by the Bankruptcy Code and implemented by the Bankruptcy Rules.

A requirement that an affirmative act, such as the filing of a complaint or a motion, be done before a deadline expires is procedural because it regulates the judicial process for enforcing the substantive law and is within the congressional delegation of rulemaking authority. See Hanna v. Plumer, 380 U.S. 460, 464 (1965).  Even if a procedural rule has "incidental effects" on the substantive rights of a party, it may not be outside of the congressional delegation of authority to make procedural rules.  Id. at 465.  A procedural rule may be enforced even if it has "some minor collateral effect upon litigants' rights."  Greene, 223 F.3d at 1072.  But

19

"applying a purportedly procedural rule in a manner that alters the rules of decision by which a court determines the rights of the parties is substantive."  Id. at 1071-72 (Bankruptcy Rule 9006(a) may not be applied to extend the 90-day preference period in § 547).  So, the difference between substance and procedure is not one of degree, but of kind.  Id. at 1071.  Therefore, the dispositive inquiry under 28 U.S.C. § 2075 is what the rule regulates, not the magnitude of the regulation.  Id. at 1072 (citing Hanna, 380 U.S. at 464); Marshall v. Mulrenin, 508 F.2d 39, 44 (1st Cir. 1974).

Providing an honest debtor with a fresh start through a discharge of her obligations has been one of the primary purposes of federal bankruptcy law since 1898.  Williams, 236 U.S. at 554-55.  Dismissal for abuse of the bankruptcy process has been a part of the Bankruptcy Code since 1984.[11]  In 2005, Congress substantially amended § 707(b) to include objective criteria for determining abuse in certain circumstances, expanded the parties who could seek dismissal from only the court and the UST to any party in interest, changed the standard for dismissal from "substantial abuse" to "abuse," and imposed deadlines for review and action on the UST.  BAPCPA, Pub. L. No. 109-8, § 102, 119 Stat. 23, 27 (2005).  These reforms were part of implementing "needs-based debt relief, the legislation's principal consumer bankruptcy reform."  H.R. Rep. No. 109-31, pt. 1, at 48 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 119.

The needs-based reforms now require both the UST, and ultimately the courts, to review an individual debtor's income and expenses.  This inquiry is necessarily comprehensive and may

---

[11]  As originally enacted in 1978, § 707 of the Bankruptcy Code only permitted a court to dismiss a bankruptcy case for unreasonable delay by a debtor that was prejudicial to creditors, or nonpayment of fees.  Pub. L. No. 95-598, § 707, 92 Stat. 2549 (1978).  In 1984, § 707 was amended to permit dismissal of a case filed by a consumer debtor if the granting of relief would be "a substantial abuse of the provisions of this chapter."  Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 312, 98 Stat. 333 (1984).

require the UST to review detailed information, much of which must be obtained from a debtor. See Clippard v. Russell (In re Russell), 392 B.R. 315, 360 (Bankr. E.D. Tenn. 2008) (UST and bankruptcy trustee have a duty to assure that debtors provide the information required by the schedules and statement of financial affairs); In re Ashraf, 367 B.R. 151, 155 (Bankr. D. Ariz. 2007) (debtors must provide full disclosure of all information that aids the court in understanding their financial affairs and transactions); but see Perrotta, 378 B.R. at 29 (detailed information, beyond that filed with the court by the debtor, not required for purposes of § 707(b)(2) determination of presumption).

Bankruptcy Rule 4004(c)(1)(D) is intended to prevent a motion to dismiss under § 707(b) from being rendered moot due to the entry of a discharge order. See Bankruptcy Rule 4004(c), Advisory Committee's Notes, 1991 Amendments. But in conjunction with Bankruptcy Rule 4004(a) it also serves to create a gap period during which discovery of information that would be grounds to deny or revoke a discharge under the provisions of § 727 could not be raised by a party in interest. In effect, the pursuit of the congressionally-mandated abuse standards in § 707(b) through a motion to dismiss may allow a dishonest debtor to obtain a fresh start through a discharge in bankruptcy.

As discussed above, courts have employed two methods to resolve the problems posed by the discovery of information which could bar a discharge during the gap period, but both are problematic. The strict approach may give a dishonest debtor a discharge. The equitable approach modifies the language of § 727(d) to avoid a conflict with the Bankruptcy Rules in order to implement the Bankruptcy Code's fresh start policy. This Court finds neither approach satisfactory for two reasons.

First, the congressional delegation of rulemaking authority to the Supreme Court in 28 U.S.C. § 2075 authorizes procedural rules, but not substantive rules that are inconsistent with the Bankruptcy Code. Bankruptcy Rule 4004(a) sets a strict deadline for both creditors and the UST in filing objections to discharge and the deadline may be extended for cause. Bankruptcy Rule 4004(b). A lack of diligence or oversight on the part of a creditor or the UST may lead to a dishonest debtor obtaining a discharge, but the deadline serves to prompt parties in interest to act on objections to discharge and produces finality. Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality."). Both Bankruptcy Rule 4004(a) and Bankruptcy Rule 4004(c)(1)(D), each standing alone, are procedural rules. Cf. Hanna, 380 U.S. at 464. But together these two apparently procedural rules alter the fresh start policy of the Bankruptcy Code by creating a gap period that provides a safe harbor for dishonest debtors. A dishonest debtor might then gain an unfair advantage because the safe harbor renders impotent information that would otherwise deny a discharge. Habash, 529 F.3d at 405. Neither § 727 nor the fresh start policy of the Bankruptcy Code permit such a result. The effect of literally applying Bankruptcy Rule 4004 in this case is to deny a party in interest the right to either object to or seek a revocation of a discharge. This denial alters that party's substantive rights under the Bankruptcy Code contrary to the limitations of 28 U.S.C. § 2075 and could result in a discharge for a dishonest debtor.[12]

---

[12] This is not a case where the party opposing discharge was idly waiting for a third party to take action or simply failing to conduct any investigation of the debtor. Compare Habash, 529 F.3d at 406. The UST was pursuing a congressional mandate to investigate and seek dismissal or conversions of cases which might abuse the bankruptcy process. See 11 U.S.C. § 707(b). During that process, the UST uncovered information which called into question the Debtor's right to a discharge under § 727(a). However, the UST acquired that knowledge after the deadline to object to the Debtor's discharge had expired and before a discharge order had been entered. A discharge order ordinarily would have been entered shortly after the deadline expired. Bankruptcy Rule 4004(c)(1). But because the UST had filed a

Second, Congress has directed this Court to enforce the provisions of the Bankruptcy Code which implement the fresh start policy and to prevent abuses of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).  Section 105(a) gives bankruptcy courts broad authority to exercise their equitable powers—where necessary and appropriate—to implement other Bankruptcy Code provisions.  Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 43 (1st Cir. 2008).  This power gives considerable discretion to bankruptcy courts, but it is not "a roving commission to do equity."  Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir. 1997).  Thus, a court may invoke § 105(a) if the equitable remedy is necessary to preserve a right elsewhere provided in the Code, is consistent with the Code, and does not alter the Code's distribution of other substantive rights.  Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000).

Section 105(a) gives the court, among other things, the power to take action to prevent an abuse of process.  The "abuse of process" provision in § 105(a) advances one of the essential canons of the Bankruptcy Code:

> [Bankruptcy courts are] duty bound to take all reasonable steps to prevent a debtor from abusing or manipulating the bankruptcy

---

motion to dismiss the case as an abuse under § 707(b), Bankruptcy Rule 4004(c)(1)(D) directed that a discharge not be entered.

> process to undermine the essential purposes of the Bankruptcy
> Code, including the principle that all the debtor's assets are to be
> gathered and deployed in a bona fide effort to satisfy valid claims.

Marrama v. Citizens Bank of Massachusetts (In re Marrama), 430 F.3d 474, 477 (1st Cir. 2007),

aff'd, 549 U.S. 365 (2007).  The Court therefore has the power to prevent abuse of process, and,

within reason and consistent with the Code, take steps to prevent parties from doing things such

as hiding or failing to disclose assets to manipulate the bankruptcy process.  See United States v.

Johnston, 267 B.R. 717, 721-22 (N.D. Tex. 2001) (bankruptcy court's equitable power under

§ 105(a) to prevent abuse of process included allowing post-confirmation amended proof of

claim where debtor failed to disclose her interest in a home on her bankruptcy schedules).

The objection deadline may on the facts of a given case result in an abuse of the

bankruptcy process.  This is such a case.  A literal reading of the Bankruptcy Rules here creates a

gap period between the deadline to object and the entry of a discharge to block an objection to

discharge based upon information uncovered during the gap period, when a party in interest

diligently pursued a possible abuse of the Bankruptcy Code under § 707(b).  The Court finds that

providing an allegedly dishonest debtor with an opportunity to obtain a discharge in bankruptcy

and get a fresh start, contrary to basic and long-standing bankruptcy policy as expressed in the

Bankruptcy Code and without having to successfully rebut the allegations in the complaint,

would be an abuse of the bankruptcy process.

## IV.  CONCLUSION

The deadline in Bankruptcy Rule 4004(a) coupled with the delay in entering a discharge

mandated by Bankruptcy Rule 4004(c)(1)(D) together create a gap period.  A literal application

of those rules will deny the UST and the Court the ability to enforce the fresh start policies of the Bankruptcy Code.  That result would be an abuse of the bankruptcy process within the meaning of § 105 and would result in altering the UST's substantive rights under § 727 of the Bankruptcy Code, contrary to the congressional delegation of rulemaking authority in 28 U.S.C. § 2075.  The delay in entering a discharge required by Bankruptcy Rule 4004(c)(1)(D) implements the provisions of § 707(b) and § 727 and is consistent with the needs-based amendments to the Bankruptcy Code under BAPCPA and the fresh start policies of the Bankruptcy Code.  But in this case, the provisions of Bankruptcy Rule 4004(a) change the substantive provisions of § 727 and may result in an abuse of the bankruptcy process.  Accordingly, Bankruptcy Rule 4004(a) must yield to the substantive provisions of the Bankruptcy Code and 28 U.S.C. § 2075.

For the reasons set forth above, the Court finds that the application of the deadline in Bankruptcy Rule 4004(a) to the facts of this case would be an abuse of fundamental bankruptcy policies and contrary to the congressional delegation of rulemaking authority.  Therefore, the Court shall enter an order: (1) denying the Debtor's motion to dismiss; (2) directing the UST to amend her complaint within 15 days to assert her existing objections to discharge under the provisions of § 727(a); (3) allowing the Debtor 15 days thereafter to file a response; and (4) scheduling a pretrial conference.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   June 3, 2009                              /s/ J. Michael Deasy
                                                  J. Michael Deasy
                                                  Bankruptcy Judge

25