2010 BNH 018       Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 07-11614-JMD |
| | Chapter 7 |
| Laura Perrotta, | |
|     Debtor | |
| | |
| John P. Fitzgerald, Acting United States Trustee, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 08-1117-JMD |
| | |
| Laura Perrotta, | |
|     Defendant | |

*Ann Marie Dirsa, Esq.*
*Office of the U.S. Trustee*
*Manchester, New Hampshire*
*Attorney for the U.S. Trustee*

*Mark P. Cornell, Esq.*
*Cornell and Ovitt Puc, PLLC*
*Concord, New Hampshire*
*Attorney for Debtor/Defendant*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

      This is the fifth memorandum opinion in this ongoing bankruptcy saga, and the second in this adversary proceeding.  The United States Trustee ("UST") sought to revoke the Debtor's discharge under § 727(d)(1) of the Bankruptcy Code[1] because the Debtor allegedly failed to

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

disclose credit card cash advances and her interest in bank accounts on her schedules. The Debtor filed a motion to dismiss, arguing that revoking her discharge was premature under § 727(d)(1) because no discharge had entered. The Court will not repeat the entire background and instead refers the parties to its prior decision. See U.S. Trustee v. Perrotta (In re Perrotta), 406 B.R. 1 (Bankr. D.N.H. 2009). To briefly summarize, the Court denied the Debtor's motion to dismiss and allowed the UST to amend the complaint to include counts under § 727(a) because enforcing the deadline to object to discharge in Fed. R. Bankr. P. 4004(a) under the circumstances of a "gap period"[2] situation would be contrary to the fresh start policy of the Bankruptcy Code, the congressional delegation of rulemaking authority in 28 U.S.C. § 2075, and would be an abuse of the bankruptcy process under § 105(a).

The UST amended the complaint on June 16, 2009, to include three counts under § 727(a)(2) and (a)(4), and the Debtor again filed a motion to dismiss (Doc. No. 25) (the "Motion"). In one of her supplemental responses, the Debtor asked that the Court treat her motion to dismiss as a motion for summary judgment based on Fed. R. Civ. P. 12(d), as incorporated by Fed. R. Bankr. P. 7012. The Debtor now argues that the UST's amended complaint should be dismissed as untimely under Fed. R. Bankr. P. 4004(a) because the UST learned of all the facts in the amended complaint more than sixty days before filing the original complaint on August 27, 2008. The Court held a hearing on the amended complaint and the

---

[2] A "gap period" refers to when a party discovers evidence of potential fraud that would support a § 727(d)(1) action after the deadline to object to discharge in Fed. R. Bankr. P. 4004(a) but before the discharge is entered by the court. The Judicial Conference has proposed an amendment to Rule 4004 to eliminate this problem which will become effective December 1, 2011, unless Congress acts otherwise. See http://www.uscourts.gov/rules/newrules6.htm.

Motion and gave the parties time to file supplemental objections, responses, and evidence for the summary judgment record.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  SUMMARY JUDGMENT RECORD

### A.  Summary judgment standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable here by Fed. R. Bankr. P. 7056, a summary judgment motion should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

> [T]he role of summary judgment is to "pierce the pleadings" and to determine whether there is a need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The moving party must "put the ball in play" by averring the absence of any genuine issue of fact. Id. at 48. Once the ball is in play, however, the non-moving party must come forward with competent evidence to rebut the assertion of the moving party. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Not every factual discrepancy is sufficient to defeat a motion for summary judgment. "[E]vidence that 'is merely colorable or is not significantly probative'" cannot defeat the motion. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 140 (1st Cir. 2010).  If the movant makes a preliminary showing that no genuine issue of material fact exists, the nonmovant must produce suitable evidence to establish a trialworthy issue.  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).  Otherwise, the nonmovant's failure to produce evidence on essential factual elements on which it would bear the burden of proof at trial requires summary judgment for the movant.  Id.  As part of the summary judgment record, courts may take judicial notice of their own dockets.  See Fed. R. Bankr. P. 9017 (incorporating Fed. R. Evid. 201); LeBlanc v. Salem, (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999).

### B. The evidence

The summary judgment record establishes the following facts.  On July 31, 2007, the Debtor filed for chapter 7 bankruptcy.  On August 9, 2007, the UST sent a letter to the Debtor's counsel requesting more information on her income and deductions listed on her Form 22A.  The Debtor provided some of the information but refused to turn over the rest because she believed it was not required.  On September 17, 2007, the UST filed a motion for a Rule 2004 examination.  On October 12, 2007, the UST filed a motion to dismiss the case for abuse under § 707(b)(2) and (b)(3).  On November 6, 2007, the Court denied the motion for a Rule 2004 examination.  In re Perrotta, 378 B.R. 27 (Bankr. D.N.H. 2007).  On November 21, 2007, the Court denied the UST's motion to dismiss as to § 707(b)(2), allowed the § 707(b)(3) portion to proceed, and scheduled a hearing.  In re Perrotta, 378 B.R. 434 (Bankr. D.N.H. 2007).

On November 27, 2007, the UST sent an e-mail to the Debtor's counsel requesting documents and to depose the Debtor (and Mr. Perrotta) in connection with the remaining part of the motion to dismiss.  Two days later, the UST sent another e-mail to the Debtor's counsel

asking to examine the Debtor on one of several dates in December.  Thereafter, from late November 2007 through May 2008, the hearings on the UST's motion to dismiss were continued several times, sometimes by agreement of the parties and other times at the Debtor's request.  The UST attributes most of the delay to the Debtor's failure in producing those documents (or providing a written release form for her financial records) and a decline in Mr. Perrotta's health.

After failing to receive a firm agreement on a deposition date, on December 6, 2007, the UST served the Debtor with a subpoena requiring her to produce documents by January 7, 2008, and to appear for a deposition on January 10, 2008.  Also on December 6, 2007, the UST served a subpoena on Mr. Perrotta to produce documents and appear for a deposition on those same dates.  The scheduled depositions did not take place because the parties realized that it would be best to first have the Debtor's account records, and Mr. Perrotta apparently was hospitalized for medical problems.  The parties rescheduled Mr. Perrotta's deposition to February 5, 2008, but that was later rescheduled again at the Debtor's request to March 4, 2008.  On February 7, 2008, the UST finally received the Debtor's release form allowing the UST access to certain financial records.  The UST then sent letters to the Debtor's account holders requesting those records.  The parties agreed to reschedule the depositions to an agreeable date in the future.  After receiving the account records, the UST discovered another account not disclosed on the schedules and sent a letter on March 28, 2008, to the Debtor's counsel requesting another written release form.  In the interim, the parties rescheduled the depositions for May 12, 2008, and the UST asked the Debtor's counsel to provide all documents and records requested by May 7, 2008.

On May 4, 2008, the Debtor then filed a motion to dismiss the UST's motion to dismiss. On June 17, 2008, the Court denied the Debtor's motion to dismiss. In re Perrotta, 390 B.R. 26 (Bankr. D.N.H. 2008).

On May 19, 2008, Mr. Perrotta's counsel (separate from the Debtor's) advised the UST that Mr. Perrotta would appear for a deposition on June 10, 2008, but that was later changed due to more health issues. On June 9, 2008, the UST agreed with the Debtor's counsel to reschedule the Debtor's deposition to June 26, 2008. In the meantime, the Debtor sent the UST a few more of the requested documents. Finally, on June 26, 2008, the UST deposed the Debtor. Based on her responses about her bank accounts, the UST had more questions and issues that needed to be explored. Meanwhile, the UST had trouble getting Mr. Perrotta to appear for a deposition, again for health reasons, and the UST later determined that Mr. Perrotta's appearance would be doubtful absent a court order. On August 27, 2008, the UST withdrew the still pending motion to dismiss under § 707(b)(3) and filed this adversary under § 727(d)(1) to revoke the Debtor's discharge. In accordance with the Court's June 3, 2009 order, the UST amended the complaint to include counts under § 727(a) on June 16, 2009.

## III. DISCUSSION

### A. The arguments

The Debtor argues that the UST's amended complaint should be dismissed as untimely under Fed. R. Bankr. P. 4004(a) because the rule's sixty-day time limit should be the appropriate measure of timeliness, and the UST learned of all the facts in the amended complaint more than

sixty days before filing the original complaint on August 27, 2008.[3] She contends that the UST's new amended counts under § 727(a) should be barred because the UST took the Debtor's deposition on June 26, 2008 (sixty-two days before the original complaint) and had all the documents she needed at least 118 days before filing the original complaint.  Thus, she argues that the UST had information in her possession from which the UST could have known there were grounds to oppose the discharge under § 727(a) as well.  Put differently, even though the Debtor agrees that the amended complaint relates back to the original complaint's filing date, she still believes the amended complaint is untimely because the new counts under § 727(a) rely on the same evidence that the UST still knew of well before filing the original complaint.  In support of this argument, the Debtor primarily points to the bankruptcy policy of quick and efficient administration of bankruptcy estates.  See, e.g., Katchen v. Landy, 382 U.S. 323, 328-29 (1966).

In response, the UST interprets the Debtor's position as an equitable one.  The UST argues that the Debtor's position is essentially a laches defense which must fail because the Debtor cannot demonstrate undue delay, prejudice, or clean hands.  In particular, the UST argues that any delay was not unreasonable because she actively pursued investigating facts to support her claims throughout the case and, in any event, the Debtor has not suffered any prejudice (or at least genuine issues regarding prejudice remain).

---

[3] The Debtor agrees that the amended complaint relates back to the original complaint's filing date of August 27, 2008.

### B. Analysis

Because the Debtor asked that the Court treat the Motion as a motion for summary judgment based on Fed. R. Bankr. P. 7012, the Court reads the record in the light most flattering to the UST and draws all reasonable inferences in the UST's favor.

As the UST points out, the Debtor's argument for summary judgment here is essentially equitable. The Debtor contends that it would be unfair to allow the UST to amend her complaint when the information she had available to support her amended claims was already in her possession before the original complaint was filed. While true, the UST's delay was only sixty-two days after taking the Debtor's deposition, which could have been conducted much earlier had there been more cooperation from the Debtor (again, viewed in the UST's favor as she puts it). Perhaps the UST knew facts sufficient to support her claims much earlier given that she also had the Debtor's financial documents for her review at least 118 days before filing the original complaint. And perhaps the UST should have filed the complaint much quicker after taking the Debtor's deposition because the documents raised similar concerns about the Debtor's finances (though the UST says more questions were raised as a result of the deposition). But those considerations only raise questions that directly bear on genuine issues in this case. That makes summary judgment inappropriate. See Murphy v. Timberland Reg'l Sch. Dist., 973 F.2d 13, 16 (1st Cir. 1992) (summary judgment inappropriate because genuine issues of material fact remained concerning the defendant's assertion of prejudice). The record before the Court does not conclusively put to rest all the material facts, nor does it prove that the Debtor is entitled to judgment as a matter of law.

Additionally, as the UST points out, the Debtor's argument is fundamentally a laches defense.  Laches requires the party invoking the doctrine to demonstrate "that the delay in bringing the action was unreasonable and that the delay was prejudicial to the party."  St. Onge v. Zuccola (In re St. Onge), 317 B.R. 39, 44 (Bankr. D.N.H. 2004).  Although summary judgment may be granted on equitable grounds, see 10B Wright, Miller & Kane, Federal Practice & Procedure § 2731 (3d ed. 1998), too many genuine issues of material fact remain.  Assuming the Debtor's position on laches is plausible, the record still contains no evidence that any delay in the filing of the amended complaint was unreasonable or that the Debtor suffered any prejudice by the delay.  Thus, summary judgment would be inappropriate on those grounds.

## IV.  CONCLUSION

In sum, the Court will deny the Motion because (1) genuine issues remain regarding when and how much the UST knew to support her claims in the amended complaint, and (2) the Debtor has not demonstrated any prejudice suffered by the UST's alleged delay in filing the amended complaint.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   April 21, 2010                           /s/ J. Michael Deasy
                                                 J. Michael Deasy
                                                 Bankruptcy Judge